**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Gary FRAZIER, Defendant.**

**Civ. A. No. 85–2156.**

United States District Court, D. Kansas.

May 30, 1986.

78

Brian E. Gardner, A. Bradley Bodamer, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., John C. Cozad, Stanley A. Reigel, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for plaintiff.

Kenneth P. Soden, John M. Cox, Soden & Isenhour, Mission, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on plaintiff's motion to disqualify defendant's

counsel. During the course of briefing the motion, defendant filed a motion to strike plaintiff's reply brief as untimely. Because an attorney's dilatory filing of any brief may deprive his or her client of an opportunity to convince the court on a particular issue, such delay is certainly not encouraged. As a matter of practice, however, we normally consider any brief submitted prior to our ruling. Because plaintiff's reply brief was received well before we addressed plaintiff's motion to disqualify, we choose to consider the arguments raised in that reply brief.

Plaintiff's motion to disqualify defendant's counsel arises in the following factual setting.[1] On April 19, 1978, Kenneth P. Soden and William O. Isenhour, Jr., executed separate, personal guaranties of the Tri-State Road Boring Company's indebtedness to the Mission State Bank and Trust Company. Defendant executed a similar guaranty on January 24, 1980, although without the knowledge of either Soden or Isenhour. Through the instant action, plaintiff seeks to enforce defendant's guaranty agreement and prays for judgment in excess of $500,000.00. Defendant's attorney in this action is John M. Cox, the third member (along with Soden and Isenhour) in the law firm of Soden & Isenhour, P.A. ["S & I"]. The defendant is incarcerated in the United States Penitentiary at Leavenworth, and is currently indigent. S & I has represented defendant for over twenty years, and is proceeding in this action on a *pro bono* basis. Although Soden and Isenhour are not parties to this action, plaintiff has filed a separate action against them seeking to recover on their personal guaranties.

Based on these facts, plaintiff contends that the disqualification of S & I as defendant's counsel is mandated. First, plaintiff notes that defendant and S & I have conflicting interests. Two of S & I's three members have signed guaranty agreements identical to that sought to be enforced against defendant. Should defendant suffer a judgment against him in this action, and then either Soden or Isenhour do the same in the action pending against them, they could assert against defendant a right of contribution for defendant's proportionate share of any judgment they might pay. *See* K.S.A. 60–2413(a). Accordingly, Soden and Isenhour might actually *benefit* if S & I were to lose this case. Although Cox (and not Soden or Isenhour) is defendant's attorney of record, plaintiff cites *State v. Rice*, 227 Kan. 416, 420, 607 P.2d 489, 494 (1980), for the proposition that "a lawyer should not accept representation of any client *if the lawyer's partner or associate would be disqualified* from accepting the same employment due to a conflict of interest." (Emphasis added.)

Additionally, plaintiff sees a need to disqualify defendant's counsel because Soden and Isenhour will probably be called as witnesses for plaintiff during the trial of this matter. Their testimony will be used to establish the validity of the underlying indebtedness of the Tri-State Road Boring Company, and thus of defendant's liability on his personal guaranty thereof.

Finally, plaintiff notes that S & I's continued representation of defendant in this action, given the apparent conflict of interests between defendant and two of S & I's members, could present to the public a serious appearance of impropriety.

■ Initially, defendant contends that plaintiff lacks standing to challenge defense counsel's qualifications. "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *Beck v. Board of Regents of the State of Kansas*, 568 F.Supp. 1107, 1110 (D. Kan. 1983). As we recognized in *Beck*, however, an exception to this rule does exist "where the interests of the public are so greatly implicated that third-parties, such as the defendants in this motion, are found to be entitled to raise any apparent conflicts of interest which may tend to un-

---

1. The facts listed below are those alleged by plaintiff and supplemented by defendant's affidavit.

dermine the validity of the proceedings." *Id.* Indeed, we there held that such a situation imposes "an ethical *duty* upon each member of the bar and upon the court itself to examine the conduct and determine if a breach of professional ethic has occurred or is about to occur." *Id.* (emphasis added). We agree with plaintiff that this exception is properly invoked in the instant case. Accordingly, we proceed to consider the substantive objections raised by plaintiff.

■ Those objections are based on various disciplinary rules contained in the ABA's Code of Professional Responsibility. Those disciplinary rules, "mandatory in character," *see State v. Alvey*, 215 Kan. 460, 464, 524 P.2d 747, 751 (1974), have been adopted by the Kansas Supreme Court as that court's Rule No. 225. *See* Kan.Stat.Ann., ch. 20, art. 31 (1985 Supp.); 235 Kan. cxxvii–cliv. In particular, plaintiff contends that the disqualification of defense counsel is required under Disciplinary Rules 5–101(A) & (B), 5–102(A) & (B), and 5–103(A).

Disciplinary Rule 5–101(A) provides as follows:

> *Except with the consent of his client* after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

(Emphasis added.) Although the typical conflict implicated by this rule is between an attorney's current client and another current or former client, the rule is not so restricted. The Kansas Supreme Court has recognized that the facts may be such that a conflict of interests exists between an attorney's current client and the attorney himself. *See Floyd v. State*, 208 Kan. 874, 877, 495 P.2d 92, 95 (1972). Plaintiff contends that the combination of Soden and Isenhour's execution of personal guaranties identical to that sought to be enforced against defendant in this action and their membership in the same law firm as de-

fendant's current counsel creates such a conflict between defendant and his counsel.

Defendant has submitted a sworn affidavit in which he consents to S & I's continued representation of him in this action, regardless of any conflict of interests that might exist. Given the highlighted phrase quoted above, this would appear to end the discussion as to Disciplinary Rule 5–101(A). Plaintiff contends, however, that such consent is ineffective. Citing the Kansas Supreme Court decisions in *State v. Pringle*, 233 Kan. 726, 667 P.2d 283 (1983) (per curiam), and *In Re Phelps*, 204 Kan. 16, 459 P.2d 172 (1969), *cert. denied sub nom. Phelps v. State Board of Law Examiners*, 397 U.S. 916, 90 S.Ct. 922, 25 L.Ed.2d 97 (1970), plaintiff relies on the rule that "[a]n attorney cannot intentionally violate the disciplinary rules at the request of a client." *Pringle*, 233 Kan. at 733, 667 P.2d at 288; *accord Phelps*, 204 Kan. at 19, 459 P.2d at 174–75.

Although valid, the rule barring a client's consent to an attorney's unethical conduct has no application in the conflict of interest context. On the contrary, "[a] client may ... expressly or impliedly consent to an attorney's representing adverse interests." *In Re Estate of Richard*, 4 Kan.App.2d 26, 34, 602 P.2d 122, 128 (1979). Indeed, the federal circuits have taken pains "to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the avoidance of representations where undivided loyalty is impossible." *Unified Sewerage Agency of Washington County, Oregon v. Jelco, Inc.*, 646 F.2d 1339, 1350 (9th Cir.1981); *accord Melamed v. ITT Continental Baking Co.*, 592 F.2d 290, 293 (6th Cir. 1979). In the circumstances here presented, we conclude that the balance weighs in favor of defendant's right to his own freely chosen counsel. Accordingly, we reject plaintiff's request that defendant's counsel be disqualified under Disciplinary Rule 5–101(A).

■ Plaintiff's next argument for disqualification relies on Disciplinary Rule 5–101(B), which provides as follows:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

. . . .

(4) As to any matter, *if refusal would work a substantial hardship on the client* because of the distinctive value of the lawyer or his firm as counsel in a particular case.

(Emphasis added.) Plaintiff's contention that Soden and Isenhour will be called as witnesses at trial is sufficient to invoke the provisions of this rule. We conclude, however, that defendant would suffer "substantial hardship" if his current counsel were ordered disqualified. Defendant's indigency and his current incarceration status render it extremely unlikely that he could obtain replacement counsel. S & I is representing defendant on a *pro bono* basis and has served as his legal counsel for over twenty years. Such long tenure serves to negate any implication that S & I's sole motive in offering its *pro bono* services is to sabotage defendant's defense to this action. Accordingly, we reject plaintiff's Disciplinary Rule 5–101(B) challenge to defendant's current counsel.

Disciplinary Rules 5–102(A) and (B) provide as follows:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, *except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).*

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

It is far from clear that Disciplinary Rule 5–102(A) has any relevance to this action. Defendant has not suggested that he intends to call either Soden or Isenhour as a witness on his *own* behalf. Assuming that were to be done, however, the rule would still not mandate S & I's disqualification. As highlighted above, the exception contained in Disciplinary Rule 5–101(B)(4) is specifically incorporated into this rule. Therefore, for the same reasons stated in conjunction with Disciplinary Rule 5–101(B), we would reject a disqualification motion premised on Disciplinary Rule 5–102(A).

■ As to Disciplinary Rule 5–102(B), our analysis is slightly different. On its face, this rule would appear applicable to the situation presented here. As we have elsewhere noted, however, "Disciplinary Rule 5–102 is not a rule to be applied *per se* according to its terms, but rather it is a rule which should be applied according to the 'attending facts' in each case." *Field v. Freedman,* 527 F.Supp. 935, 942 (D.Kan. 1981). One such "attending fact" is the identity of the party seeking to obtain an attorney's testimony. Where the party moving for disqualification chooses to call its opponent's attorney as a witness, we must be especially sensitive to the potential for abuse. If disqualification were routinely granted in such situations, the temptation to remove an opponent's counsel from the scene would be tremendous. Thus, despite the explicit language of Disciplinary Rule 5–102(B), we have held that "[a]n entire law firm need *not* be disqualified simply because one member of that firm will be a witness on a material fact." *Field,* 527 F.Supp. at 942 (emphasis added). Accordingly, the fact that Soden and Isenhour may be called as witnesses in this action does not mandate Cox's (or S & I's) disqualification as defendant's counsel.

■ The final Disciplinary Rule cited by plaintiff is 5–103(A). It provides as follows:

A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses.

(2) Contract with a client for a reasonable contingent fee in a civil case.

The facts alleged by plaintiff do not even fall within the literal terms of this rule. It is true, of course, that Soden and Isenhour's joint liability with defendant on their personal guaranties might fall within the *spirit* of this rule. Even assuming this to be the case, however, the same considerations discussed in connection with Disciplinary Rule 5–101(A) would render defendant's consent to S & I's continued representation sufficient to defeat plaintiff's motion for disqualification.

■ Finally, plaintiff objects to the appearance of impropriety created by S & I's continued representation of defendant. In a technical sense, of course, plaintiff is correct in pointing to this appearance of impropriety. The actual public perception is, however, quite another matter. As between the plaintiff (which is suing defendant for over a half-million dollars) and S & I (which has represented defendant for over twenty years and is now representing him on a *pro bono* basis), the public would no doubt perceive S & I as the party most desirous of protecting defendant's interests. Indeed, one could argue that only injustice would be served by heeding plaintiff's call for stripping defendant of the sole legal counsel he could likely obtain in his effort to resist plaintiff's suit against him. Accordingly, we decline to embrace plaintiff's "appearance of impropriety" argument.

IT IS THEREFORE ORDERED that defendant's motion to strike plaintiff's reply brief is denied.

IT IS FURTHER ORDERED that plaintiff's motion to disqualify defendant's counsel is denied.