NOT DESIGNATED FOR PUBLICATION

No. 127,531

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VICTOR MARK SIMMONS,
*Appellant,*

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Crawford District Court; M. JENNIFER BRUNETTI, judge. Submitted without oral argument. Opinion filed April 25, 2025. Reversed and remanded with directions.

*Kristen B. Patty*, of Wichita, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., COBLE and PICKERING, JJ.

PER CURIAM: In 2018, a jury convicted Victor Mark Simmons of possessing methamphetamine with intent to distribute more than 100 grams and misdemeanor fleeing or eluding a police officer. Simmons appealed and this court affirmed his convictions. Simmons subsequently filed a K.S.A. 60-1507 motion arguing, in part, that his trial counsel provided ineffective assistance of counsel and the State knowingly used false testimony, focusing on the alleged false testimony by a police officer at trial. The district court summarily denied his motion without holding an evidentiary hearing. Simmons now appeals the district court's summary denial, contending he was entitled to

an evidentiary hearing. For the reasons explained below, we find Simmons offered a precise enough allegation under oath, claiming facts not in the record, and that we cannot say his motion and the record conclusively show he is entitled to no relief. We reverse the district court's decision and remand for an evidentiary hearing.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts underlying Simmons' convictions are set forth in this court's previous opinion in *State v. Simmons*, No. 121,042, 2020 WL 4250115, at *1-2 (Kan. App. 2020) (unpublished opinion):

"A jury convicted Simmons of possessing methamphetamine with intent to distribute more than 100 grams, see K.S.A. 2019 Supp. 21-5705(a)(1), (d)(3)(D), and misdemeanor fleeing or eluding a police officer, see K.S.A. 2019 Supp. 8-1568(a)(1), (c)(1)(A). The district court sentenced him to 196 months in prison.

"At trial, the State presented evidence that Simmons fled, first in a car and then on foot, from a law enforcement officer conducting a traffic stop on December 2, 2016. During a search of the car, police found methamphetamine in the car's glove box. We summarize the trial testimony below.

"Dustin McDaniel and Jeremy Karlinger, two drug enforcement unit detectives, saw Simmons waiting outside a residence in the driver's seat of a green Cadillac. They confirmed with dispatch that he had a suspended license. They then asked Officer Joe Noga to wait around the corner in case Simmons decided to drive away. Noga was familiar with Simmons, knew his nickname was 'Dash,' and knew he did not have a valid license.

"Karlinger saw Anthony Logan get in the Cadillac but he did not see Logan bring anything with him. In his testimony, Logan confirmed he took nothing into the Cadillac. Logan also denied carrying narcotics or knowing narcotics were in the Cadillac. And no one touched the glove box while he was in the car.

"Simmons drove away. When he passed Noga, Noga followed, activating his emergency lights to conduct a traffic stop for driving while suspended. But Simmons responded by speeding away. A chase ensued. Simmons drove through several stop signs

2

and, at one point, sped through a 30-mph residential area going 70 mph. During the chase, Noga could not see what was happening inside the Cadillac.

"The chase ended when Simmons pulled into an alley, jumped out of the Cadillac, and ran away through a backyard. Yet Logan stayed around. Noga stayed with Logan and the Cadillac rather than chase Simmons. Noga saw a cell phone on the ground next to the driver's door. He asked Logan if it was his, but Logan showed him another phone stating, 'No. Here is mine.'

"Lieutenant Benjamin Hendersen arrived, and the officers towed the car. During an inventory search, Henderson found in the backseat a box for an aerial drone and a black jacket. Inside the black jacket was a prescription pill bottle for 'Victor Simmons.' Inside the unlocked glove box Hendersen found a black batter's glove with an item inside—a plastic bag containing 111.42 grams of methamphetamine.

"Upon finding the methamphetamine, the officers stopped the inventory search, towed the vehicle, and got a search warrant. McDaniel and Karlinger again searched the Cadillac. This time they found another cell phone and, in the jacket pocket, a plastic bag with smaller baggies inside. Both testified that, based on their training and experience as drug enforcement officers, multiple cell phones and small plastic baggies were indications of drug distribution. Both also testified that the amount of methamphetamine found in the car showed an intent to distribute it.

"Seven days later, the police found Simmons and arrested him. While searching him, they found a cell phone and an operating manual for a drone. The operating manual matched the drone box found in the backseat of the Cadillac. Simmons asked why the police were arresting him, and they responded it was for drug charges and running from police. Although the police had not mentioned the Cadillac, Simmons replied, 'I wasn't in that car.'

"After the evidence was presented, the district court instructed the jury, including this jury instruction about the burden of proof: 'The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty *until* you are convinced from the evidence that he is guilty.' (Emphasis added.) Neither Simmons nor the State objected to this instruction at that time.

"The jury found Simmons guilty of possessing methamphetamine with intent to distribute more than 100 grams and of fleeing or eluding a police officer."

The district court sentenced Simmons to 196 months of imprisonment and 6 months in jail to run concurrent to his prison sentence. We affirmed Simmons' convictions. *Simmons*, 2020 WL 4250115, at *5. Simmons also filed a petition for review with our Supreme Court, which was denied on March 15, 2021.

On October 14, 2021, Simmons timely filed his K.S.A. 60-1507 motion, in large part claiming violations of many of his rights under the United States Constitution: (1) he was denied his right to counsel under the Sixth Amendment because his trial counsel failed to properly investigate evidence and witnesses, specifically regarding Detective Karlinger, which undermined his defense; (2) newly discovered evidence demonstrated manifest injustice, as the evidence used by the State was tainted because Detective Karlinger and Officer Noga tampered with the evidence, in violation of his Sixth, Thirteenth, and Fourteenth Amendment rights; (3) he was denied his rights under the Sixth and Fourteenth Amendments because the State denied him a trial by a jury of his peers; and (4) the State knowingly used false and misleading evidence by allowing Detective Karlinger to lie under oath regarding the reason for leaving the police department, which violated his Sixth and Fourteenth Amendment rights.

To support his claims, Simmons presented an affidavit attached to his K.S.A. 60-1507 motion, which listed three witnesses and their addresses, apparently to the extent he could perceive them: Brandy Wooten; Karl Powel Jr., and J.J. Karlinger. Although he did not explain the context of their expected testimony in the motion, his expectation of their testimony is apparent from the context of his affidavit. His affidavit contained the following allegations, which Simmons declared under the penalty of perjury:

- Brandy Wooten owned the car that Simmons was driving the day he was arrested. Simmons claimed he did not place any drugs in her car, and he knows his passenger did not place anything in the glove box of the car.

4

- Detective Karlinger and Officer Noga planted the drugs in the car Simmons was driving to unlawfully arrest him. Detective Karlinger was later fired from the Pittsburg Police Department because he was caught on video planting narcotics in Powel's vehicle.

- Detective Karlinger lied during Simmons' trial by testifying that he left the police because he found new employment. Detective Karlinger was actually fired for planting narcotics in another person's vehicle to unlawfully arrest them.

- Simmons told his trial counsel, Robert Myers, about his discovery of Detective Karlinger's termination from the police department for falsifying evidence in another case. Myers neglected to investigate his claims and failed to make meaningful adversarial contest of the evidence.

- Myers admitted to Simmons that he did not make meaningful adversarial contest and recommended that Simmons file a K.S.A. 60-1507 motion, promising that he would testify in court that he did not adequately represent Simmons.

The district court summarily denied Simmons' K.S.A. 60-1507 motion without an evidentiary hearing. The court found that if Simmons' allegation were true, the State of Kansas would have been "required to disclose under the dictates of *Brady v. Maryland*, 373 U.S. 83[, 83 S. Ct. 1194, 10 L. Ed. 2d 215] (1963)." The district court also determined Simmons' allegation against Detective Karlinger was a self-serving allegation without any support and "merely speculation and what this court believes can be attributed to folk lore or wishful thinking on behalf of Simmons."

Simmons timely appeals.

5

## DID THE DISTRICT COURT ERR IN SUMMARILY DENYING SIMMONS' K.S.A. 60-1507 MOTION WITHOUT GRANTING AN EVIDENTIARY HEARING?

Simmons argues the district court erred by summarily denying his K.S.A. 60-1507 motion without an evidentiary hearing. He claims his trial counsel provided ineffective assistance, and we should reverse the district court's decision in order to allow for an evidentiary hearing to determine whether Myers' performance was deficient.

*Applicable legal principles*

A district court has three options when examining a K.S.A. 60-1507 motion:

> """(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.'" [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020).

When a district court summarily denies a K.S.A. 60-1507 motion without an evidentiary hearing—as happened here—an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *State v. Vasquez*, 315 Kan. 729, 731, 510 P.3d 704 (2022). Moreover, whether the district court's findings of fact and conclusions of law comply with Supreme Court Rule 183(j) (2025 Kan. S. Ct. R. at 238) is a question of law that is reviewed de novo. See *Requena v. State*, 310 Kan. 105, 110, 444 P.3d 918 (2019).

Simmons, as the movant, bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, his contentions must be more than conclusory,

and either he must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). If this showing is made, the court must hold a hearing unless the motion is a second or successive motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). In other words, the district court shall hold an evidentiary hearing on a K.S.A. 60-1507 motion, "[u]nless the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." K.S.A. 2024 Supp. 60-1507(b); Supreme Court Rule 183(f) (2025 Kan. S. Ct. R. at 237).

*The district court erred by summarily denying Simmons' K.S.A. 60-1507 motion.*

Simmons raised multiple grounds for relief in his K.S.A. 60-1507 motion, although the sole argument he presents on appeal is that his trial counsel provided ineffective assistance by failing to investigate the alleged misconduct of Detective Karlinger. His overarching issue on appeal, though, is that the district court's decision to summarily deny his K.S.A. 60-1507 motion without any hearing was erroneous.

Because Simmons fails to address the other claims raised in his K.S.A. 60-1507 motion, they are abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021); *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). We consider only whether the motion, files, and records of the case conclusively established that Simmons was not entitled to relief based on his ineffective assistance of counsel claim.

The State argues an evidentiary hearing is not warranted because Simmons' claim is conclusory and is unsupported by the facts. It maintains he could have presented an evidentiary basis for his claim but did not, such as records from the Kansas Commission on Peace Officers' Standards and Training (KCPOST) showing any disciplinary action or termination against Detective Karlinger for planting evidence. The State also claims a cursory Google search of Detective Karlinger will show that he ran for Crawford County

Sheriff in 2020 and continues to be a law enforcement officer. Thus, the State argues the district court was correct to deny an evidentiary hearing for Simmons' motion as there was no evidentiary basis to support his claim for relief.

But both parties ignore that an evidentiary hearing is not the only option available to the district court, although both cite the relevant standard. The district court may determine from the motion, files, and records that a *potentially* substantial issue exists, in which case it may hold a preliminary hearing to examine as much. Then, if the court determines no substantial issue exists, the court may deny the motion. *Adams*, 311 Kan. at 578.

Here, despite the State's suggestions that Simmons should have looked outside the motion, files, and records of this case to Google and KCPOST records from his spot in prison, this is a recommendation that falls well outside the legal boundaries of the "motion, files and case records." 311 Kan. at 578. But this more limited standard is the one by which the district court is bound when deciding whether Simmons' claim is conclusively entitled to no relief. 311 Kan. at 578. We must also acknowledge the difficulty Simmons may face as an incarcerated person in his ability to readily access information.

Most importantly, in Simmons' motion and affidavit, he sets out a specific allegation, under oath, claiming facts not appearing in the original record which if true, would support a claim for relief. On this basis, he provides a sufficient claim on which to appoint him counsel to hold a preliminary hearing to establish his basis of knowledge of the alleged circumstances involving Detective Karlinger and Powel. Without doing so, we cannot say the motions, files, and records of this case *conclusively* show Simmons is entitled to no relief, because this allegation he makes under oath, and with precise information, suggests otherwise. See *Floyd v. State*, 208 Kan. 874, Syl. ¶ 1, 878, 495 P.2d 92 (1972) (even if facts raised in a K.S.A. 60-1507 motion appear "highly implausible,"

an evidentiary hearing is required unless the motion, files, and records of the case permit their complete resolution); see also *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 (2010); *Trotter v. State*, 288 Kan. 112, 132, 200 P.3d 1236 (2009) (the district court's decision to summarily deny the motion may be upheld only if it is conclusively established by the motion, files, and records of the case that the movant is entitled to no relief).

Perhaps the preliminary hearing will demonstrate Simmons' basic allegation—that Detective Karlinger planted evidence in Powel's case and was terminated as a result—is untrue. If this were to occur, then his ineffective assistance of counsel claim never comes to fruition. If the converse is true, then a full evidentiary hearing on the K.S.A. 60-1507 motion may become warranted. But this is a situation where the intermediate preliminary hearing is a useful and necessary tool.

On remand, the district court should hold an evidentiary preliminary hearing in Simmons' presence to establish the truth or falsity of his allegations regarding misconduct on the part of Detective Karlinger and the circumstances of the officer's departure from the Pittsburg County Police Department. In its discretion and upon due notice, the district court may direct the parties to address additional issues at the hearing.

Reversed and remanded with directions.